UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.                                  **MEMORANDUM OF LAW & ORDER**
                                        Crim. No. 15-49(4)

Abdirahman Yasin Daud,

    Defendant.

_____

    John Docherty and Andrew Winter, Assistant United States Attorneys, Counsel for Plaintiff.

    Bruce D. Nestor, De Leon & Nestor, LLC, Counsel for Defendant.

_____

**I.    Introduction**

The Defendant has been charged in the Superseding Indictment with Conspiracy to Provide Material Support to a Designated Terrorist Organization and Attempting to Provide Material Support to a Designated Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1). The offenses charged are serious felonies that carry a statutory maximum sentence of 15 years.

This matter is before the Court for a detention hearing.

**II.     Standard**

A defendant may be detained pending trial if the Court finds there is no "condition or combination of conditions . . . [that] will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Because the Defendant has been charged by Indictment for violations of 18 U.S.C. § 2339B, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community. 18 U.S.C. § 3142 (e)(3)(C) (18 U.S.C. § 2339B is a crime listed in 18 U.S.C. § 2332b(g)(5)).

The existence of this presumption places upon the Defendant the "limited burden of production - not a burden of persuasion - to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003)(quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)).

Detention is appropriate where the government proves by clear and convincing evidence that the Defendant is a danger to others or to the community, or when the government proves by a preponderance of the evidence that the Defendant is a risk of flight, and that in either case, there are no

2

conditions or combination of conditions that will assure the safety of the community or the Defendant's appearance at future court proceedings.

In making this determination, the Court must take into account the following factors:

> (1) The nature and circumstances of the offense charged, including the fact that the crime charged is an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including–
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A. **Weight of the Evidence**

As set forth in the sworn Complaint, in February 2015, a confidential human source ("CHS") informed the FBI that the Defendant and certain co-defendants were planning to leave the United States to join ISIL. The CHS was present for a number of conversations in which the Defendant and others discussed past efforts to leave the country and their desire to again try to travel to Syria to join ISIL.

On March 19, 2015, the CHS recorded a conversation with the Defendant in which he discussed the details of a plan to obtain fake passports, and that his parents believed he was getting married, which was the perfect situation for his departure. In another recorded conversation on March 23, 2015, the Defendant and co-defendant Mohamed Farah discussed the plan to use fake passports to travel to Syria. The Defendant advised M. Farah that they could not ride together to California. The Defendant also admitted that "this, that's fraud" and that he would go to jail and that he did not care. He also stated "I'm through with America. Burn my ID."

A week later, the Defendant provided a passport photograph to the CHS for use in a fake passport. In early April, the Defendant gave the CHS $100 in

cash as a down payment for the fake passport.

During another recorded conversation with the CHS, the Defendant and M. Farah discussed recent communications with Abdi Nur, another young Somali male from Minnesota who had succeeded in traveling overseas, during which Nur described fighting with ISIL, and a battle in Kobani in particular.

The Defendant was also involved in conversations about obtaining a rental vehicle to travel to San Diego to pick up the fake passports. After the Defendant had trouble selling his vehicle, he spoke with an undercover employee of the FBI ("UCE") who was posing as the provider of the false travel documents. The UCE offered to purchase the Defendant's vehicle. The Defendant agreed to sell the UCE his car for $5,500, which also covered the cost of the travel documents, once the Defendant reached California.

The Defendant also informed the CHS that another co-defendant, Adnan Farah, would not be traveling with them, due to information he learned from an ISIL fighter about the costs of travel.

The Defendant, M. Farah and the CHS left Minnesota for California on April 17, 2015. During the drive, the Defendant stated "I'm going to spit on America at the border crossing." M. Farah and the Defendant also discussed

tweeting two FBI agents he identified by name, upon their arrival in Syria. M. Farah stated he would tweet "what's up suckas?" The Defendant also discussed that he wanted to obtain and shoot an AK immediately upon arrival in Syria, and that he, M. Farah and the CHS would become martyrs before going to training camp.

Following his arrest, the FBI obtained a warrant for an iPod seized from the Defendant. After obtaining the warrant, the FBI discovered a Kik conversation during which the Defendant discussed travel recommendations upon his arrival in Turkey, to travel onto to Syria, with an unidentified individual that appeared to be facilitating such travel to join ISIL.

As set forth above, the weight of the evidence supports a finding of detention. The Defendant attempted to leave the United States to join ISIL and he participated in attempts to obtain forged travel documents. The evidence of concerning the Defendant's conversations with the CHS further weigh in favor of detention.

    **B.**    **Harm to the Community/Risk of Flight**

The Defendant is a legal, permanent resident of the United States. He does not have a criminal history and he has no mental health or substance abuse

issues.  He has no assets, no passport and no ties to family abroad.

The Defendant is charged with conspiring and attempting to join the most violent terrorist organization, ISIL.  The Court thus finds that the Defendant poses a risk of harm to the community.  There is harm to the immediate Minnesota community, as the record demonstrates when young men successfully travel and join a terrorist organization, they tend to reach back to Minnesota through social media to recruit other young men.  The Court also finds there would be harm to the wider community - that of civilians in the Middle East - if the Defendant succeeds in his ambition to travel to Syria and join ISIL.

Finally, there is evidence in the record which indicates the Defendant poses a flight risk.  Part of the offense conduct in this case involves the Defendant's attempt to travel overseas to join a terrorist organization, and his attempt to obtain forged travel documents to achieve his goal.

### C. History and Characteristics of the Defendant

The Defendant called as a witness Jean Emmons, who is employed as the Southeast Youth Program Manager, K-5, East Side Neighborhood Services.  Ms. Emmons testified that she first met the Defendant in 2009, when he and his siblings spent time in her out of school program.  She testified that for her, the

Defendant stood out because he was very respectful of her, and that he did not engage in any conflicts with the other children in the program. Later, the Defendant participated in a teen internship in which he assisted at the out of school program by helping with gym activities and with snacks. Ms. Emmons testified that the Defendant was an extraordinarily calm person, and worked well with the younger children.

In the summer of 2010, the Defendant worked as a camp counselor at the agency camp in Wisconsin. As a camp counselor, the Defendant assisted the young campers with swimming, fishing, and other camp activities. Ms. Emmons testified that the Defendant handled his duties with calm and patience.

Ms. Emmons last had contact with the Defendant in 2013. Prior to that, she would see the Defendant a few times a year. She commented that the Defendant was busy, working hard at school, his job and with this younger siblings.

At the hearing, the Defendant also proffered that he spent his early years in a refugee camp in Nairobi, Kenya and moved to the United States when he was nine years old. He currently is a legal, permanent resident of the United States. He is the third youngest of twelve children. He currently lives with his step sister, who he considers a mother figure.

After graduating from high school, the Defendant has attended college at the Minneapolis Community and Technical College. He is working, and turns his paycheck over to his step-sister. He also takes care of her children while she works outside the home.

**III.   Conclusion**

Based on the file, record and proceedings herein, the Court finds that the Defendant has not presented sufficient evidence to rebut the presumption in favor of detention. The Court further finds that there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the Defendant is released, and that a preponderance of the evidence demonstrates that the Defendant is a flight risk.

**IT IS HEREBY ORDERED:**

1. The Government's Motion for detention pending trial is GRANTED;
2. The Defendant is committed to the custody of the Attorney General for confinement in a correctional facility separate, to the extent possible, from persons awaiting or serving sentences or being held in custody pending appeal;

3. The Defendant shall be provided reasonable opportunities to consult privately with his lawyer; and

4. Upon order of the Court or request of the United States Attorney, the person in charge of the correctional facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of appearance in connection with future court proceedings.

Date:  May 26, 2015

         s/ Michael J. Davis
         Michael J. Davis
         Chief Judge
         United States District Court