UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff/Respondent,

v.

Abdirahman Yasin Daud,

    Petitioner/Petitioner.

**MEMORANDUM OPINION AND ORDER**
Crim. No. 15-049 (04) (MJD)

---

    Julie E. Allyn, Assistant United States Attorney, Counsel for Plaintiff/Respondent.

    Brandon Sample, Counsel for Defendant/Petitioner.

---

This matter is before the Court on Petitioner's motion to vacate or correct an illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 923.)

**I.    Background**

On June 3, 2016, a jury found Petitioner guilty on the following counts in the Superseding Indictment: Count 1, Conspiracy to Murder Outside the United States; Count 2, Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization; and Count 6, Attempting to Provide Material Support to

1

a Designated Foreign Terrorist Organization.  (Doc. No. 593.)  He was found not guilty on the perjury charge in Count 8.  (Id.)

Prior to sentencing, a presentence investigation report ("PSR") was prepared.  As set forth in the PSR, the base offense level for Count 1, Conspiracy to Murder, was found to be 33 pursuant to U.S.S.G. § 2A1.5(b)(1).  A twelve-level enhancement was then applied pursuant to § 3A1.4(a) because the crime of conviction involved or was intended to promote a federal crime of terrorism.  (Doc. No. 828 (Sentencing Memoranda and Opinion).)  As a result, the total offense level was determined to be 45, which was the greatest of the adjusted total offense levels for Petitioner's convictions.  The offense level was then reduced to 43 pursuant to Chapter 5, Part A (comment n.2.)  The resulting applicable guideline range based on a total offense level 43, criminal history category VI was found to be life imprisonment.

Trial counsel filed objections to the calculation of the application guideline range set forth in the PSR, including the application of the terrorism enhancement and the resulting application of a criminal history category VI.  (Doc. No. 715.)  Counsel also filed a motion for downward departure with regard to the application of a criminal history category VI.  (Doc. No. 699.)  Finally,

counsel filed a sentencing position brief in which he argued for a substantial downward variance from the applicable guideline range.  (Doc. No. 722.)  The Court overruled Petitioner's objections and adopted the guideline calculation set forth in the PSR.  (Doc. No. 828 (Sentencing Memorandum and Opinion).)   In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court varied from the applicable guideline range of life imprisonment and sentenced Petitioner to 360 months imprisonment on Count 1, and 180 months on Counts 2 and 6, to be served concurrently.  Petitioner's convictions and sentence were affirmed on appeal.  United States v. Farah et al., 899 F.3d 608 (8th Cir. 2018) reh'g and reh'g en banc denied, (Oct. 12, 2018), cert. denied, 139 S. Ct. 1275 (Feb. 25, 2019).

On February 25, 2020, Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  In this motion, Petitioner has asserted a number of claims based on ineffective assistance of counsel.

II.     **Standard of Review**

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed

in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Section 2255 is intended to provide federal prisoners a remedy for jurisdictional or constitutional errors. Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011). It is not intended to be a substitute for appeal or to relitigate matters decided on appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998); Davis v. United States, 417 U.S. 333, 346-47 (1974).

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citations omitted). Claims of ineffective assistance of counsel may constitute the "cause and prejudice" required to excuse otherwise

procedurally defaults claims.  Boysiewick v. Schriro, 179 F.3d 616, 619 (8th Cir. 1999).

Petitioner is entitled to an evidentiary hearing on his petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  "[A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (internal citations omitted).

**III.   Discussion**

   **A. Ineffective Assistance of Counsel**

Claims of ineffective assistance must be scrutinized under the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under the Strickland test, Petitioner must prove that: 1) counsel's representation was deficient; and 2) counsel's deficient performance prejudiced Petitioner's case. Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir. 2000) reh'g and reh'g en banc denied, (March 28, 2000).

To satisfy the first prong of the <u>Strickland</u> test, Petitioner must show that counsel's representation fell below an objective standard of reasonableness under professional norms.  <u>Strickland</u>, 466 U.S. at 688.  The inquiry should be whether counsel's assistance was reasonable considering all the circumstances surrounding the case.  <u>Id.</u>  Judicial scrutiny of counsel's performance should be highly deferential, and the general presumption is that counsel's conduct "falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689.

To satisfy the second prong under the <u>Strickland</u> test, Petitioner must show that but for counsel's errors, the outcome of the proceedings would have been different.  <u>Id.</u> at 691.

Petitioner asserts that trial counsel was ineffective with respect to Petitioner's efforts to plead guilty in this case.  He claims that he would have pleaded guilty before the second superseding indictment was filed, but his trial counsel failed to explain to him the elements of the offenses he was charged with, or the basic concepts of federal conspiracy law.  He further claims that counsel misadvised him about the penalties he was facing and failed to advise him of the concept of an open plea.  Had Petitioner received the proper advice from counsel, he argues there is a reasonable probability that he would have pleaded

guilty to the lesser charge of conspiracy to provide material support to a designated terrorist organization.

Assuming without deciding that counsel's performance was deficient because he failed to explain the applicable law, properly advise him about the penalties he was facing or to explain the concept of an open plea, the Court finds that Petitioner cannot demonstrate prejudice based on the record before it.

Early in this case, the government informed all defendants and their counsel that a window existed in which they could resolve their case with a guilty plea to the charge of conspiracy to provide material support to a terrorist organization because a second superseding indictment was forthcoming alleging defendants conspired to commit murder outside the United States; a charge that carries a statutory maximum penalty of life in prison.  The government also informed defendants and their counsel that if the second superseding indictment were filed, any resolution of the case would have to involve a guilty plea to the murder charge.

On August 14, 2015, before the second superseding indictment was filed, the government afforded Petitioner and his counsel a reverse proffer, which summarized the evidence against Petitioner to ensure he understood the case

against him and to aid him in assessing whether or not to plead guilty.  During this meeting, Petitioner was informed that the government would not extend a plea offer to Petitioner, but that if he was interested in resolving the case, he could propose terms on which his case would be resolved.

In addition, on September 28, 2015, the government facilitated a meeting between Petitioner and his family, with his counsel present, to allow them to discuss whether to plead guilty or proceed to trial.

A superseding indictment was filed on October 21, 2015 that charged Petitioner with the conspiracy to murder charge.  Thereafter, on December 11, 2015, counsel for those defendants that had not resolved their cases submitted a letter to the government in which counsel inquired into the willingness of the government to reach a plea agreement to counts other than the conspiracy to murder count.  (Doc. No. 948.)   The letter proposed the following: "Upon entry of a plea and at the time of sentencing, the United States would dismiss all charges filed pursuant to 18 U.S.C. § 956(a), and any additional charges to be negotiated.  The Defendants are not willing or able to plead to the § 956(a) charge because they would not be able to establish a proper factual basis for the plea

and because undersigned counsel would not advise them to enter a plea to this charge." (Id.)

The government responded by letter dated December 31, 2019, stating "there can be little disagreement that each defendant was provided ample notice that the government would seek a second superseding indictment containing the conspiracy to murder charge." (Doc. No. 948-1.)  Further, the government noted that "during the months between your clients' arrests and the second superseding indictment, all parties engaged in settlement discussions centered on the charges contained in the first superseding indictment.  Plea Agreements were formally tendered to Hanad Musse, Zacharia Abdirahman, Adnan Farah and Hamza Ahmed – each accompanied by a deadline.  The government also invited the remaining defendants (Mohamed Farah, Guled Omar and Abdirahman Daud) to propose a plea offer to the government for our consideration."  (Id.)  The letter goes on to note that Petitioner did not tender any proposed resolution or settlement offer to the government.  (Id.)  The government then noted that any negotiated settlement would have to include a plea of guilty to the conspiracy to murder charge.  (Id.)  Thereafter, Petitioner,

9

along with Mohamed Farah and Guled Omar, proceeded to trial and was found guilty on all charges, except the perjury charge.

Prior to sentencing, Petitioner submitted a letter to the probation office in which he claimed that his actions arose because of his concern for fellow Muslims and that he was incapable of violence.  (PSR ¶ 150.)  He further wrote "I have been willing to accept responsibility for my actions – both in the form of punishment and by recognizing that what I did was both criminal and wrong – since at least December of 2015."  (Id.)

At his sentencing hearing, trial counsel reiterated that Petitioner was not willing to plead guilty until after the second superseding indictment had been filed.

> The government did not offer a plea agreement to [Petitioner] as it did to his co-conspirators who accepted their offers.  That was the government's right.  The government is also absolutely correct that [Petitioner] did not seek a plea offer from the government any time prior to being indicted in October of 2015 for conspiracy to commit murder.   The government is also correct that from May of 2015 until October of 2015, [Petitioner] simply could have come to court, entered a straight plea to the charges against him which included the perjury count which was acquitted of at trial.  He did not do any of those actions.
>
> Your Honor, [Petitioner] is not a chess player.  The beliefs he held which resulted him seeking to ravel to Syria to join and fight for ISIS were deeply held.  They were bound up in his delusions of honor, martyrdom, and religion. . . . I met [Petitioner] in the Metropolitan Correctional Facility in

> San Diego [after his arrest in April 2015]. At that time, he thought of himself as a victim, as a person being persecuted by the United States government for his religious beliefs. He was not able, willing or able, any time prior to being indicted in October on the second superseding indictment to give up those beliefs in order to make a chess move to cut his losses, to make false claims of remorse and to enter a guilty plea.

(Doc. No. 866 (Sent. Tr. at 5-6).)

Petitioner also spoke at his sentencing hearing, and, consistent with counsel's statements, told the Court that "[f]rom the start of these investigations until December, I had a belief that I was a victim, but through self-reflection and a final, you know, coming to grips of what I actually was trying to do, I came to grips of what I truly have become." (Id. at 13.)

To succeed on his claim that he would have entered a guilty plea to the lesser charges of conspiracy to provide material support to a designated terrorist organization but for counsel's deficient legal advice, Petitioner must demonstrate counsel's performance fell below an objective standard of reasonableness, and but for such deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. Lafler v. Cooper, 566 U.S. 156, 163 (2012). As set forth above, however, the record clearly demonstrates that Petitioner was informed that a window existed in which to plead to the lesser charge of conspiracy to provide material support, and that at the reverse proffer

meeting, the government informed him of the evidence against him in support of the conspiracy to provide material support charge. It is also undisputed that the government did not extend a plea offer to Petitioner.

Most importantly, the record is clear that prior to December 2015, Petitioner steadfastly maintained his innocence, therefore the Court finds it inherently incredible that he would have been able to provide a factual basis for a plea to the lesser charge of conspiracy to provide material support to a designated terrorist organization before the second superseding indictment was filed in October 2015.

A defendant who maintains his innocence and shows no indication he would admit his guilt undermines his claim that he would have pleaded guilty if he had received better advice from counsel. See Sanders v. United States, 341 F.3d 720, 723 (8th Cir. 2003) (finding the record did not support petitioner's claim that he would have pleaded guilty if he had been properly advised by counsel as petitioner denied his guilt throughout proceedings); Chesney v. United States, 367 F.3d 1055, 1059-60 (8th Cir. 2004) ("We interpret the district court's ruling to mean that having personally observed Chesney's extensive trial testimony, in which he adamantly denied guilt, the court did not believe that Chesney would

have pleaded guilty under the government's pre-trial offer, even assuming he won the inevitable swearing contest with his trial counsel about whether the plea offer was communicated.  We find no error in the district court's conclusion.").

Here, the record contradicts Petitioner's claim that he would have pleaded guilty prior to the filing of the second superseding indictment based on his admissions that until December 2015, he was not willing or able to enter a guilty plea.

Based on the Court's finding that the allegations in Petitioner's motion are contradicted by the record and are inherently incredible, the Court finds Petitioner is not entitled to an evidentiary hearing.

## IV.   Certificate of Appealability

With regard to the procedural rulings in this Order, the Court concludes that no "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" nor would "jurists of reason . . . find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  With regard to the decision on the merits, the Court concludes that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id.

13

**IT IS HEREBY ORDERED** that:

1. Petitioner's Motion to Vacate Under § 2255 [Doc. Nos. 914 and 918] is **DENIED;** and

2. No Certificate of Appealability shall issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  August 10, 2020                     /s Michael J. Davis
                                                             Michael J. Davis
                                                             United States District Court